[No. 4048.]

THE TOWN OF COLORADO CITY V LIAFE.

1. PRACTICE—MISCONDUCT OF COUNSEL.

An assignment of error based on the misconduct of counsel in his argument to the jury will not be considered unless the record shows that the attention of the trial court was directed to such misconduct.

2. CITIES AND TOWNS—STREET COMMISSIONER—NEGLIGENCE—LIABILITY OF TOWN.

Where a street commissioner had control and direction of the improvements and repairs to be made on the streets of the town and had charge of the town teams and was engaged in hauling gravel from a pit for the purpose of improving and repairing the streets the town was liable for damages caused by the negligence of the commissioner which resulted in injury to a person employed by the commissioner while working in the gravel pit, whether or not the commissioner had express direction from the board of trustees to excavate in that particular pit.

3. CITIES AND TOWNS—NEGLIGENCE—PLEADING—WAIVER.

In an action against a town for damages for personal injuries, a complaint which alleged that plaintiff was employed by the proper officers of the town, and that through the negligence of the officers of the town he was injured, should have been more specific and should have alleged by what particular officer he was employed and that he was employed to work for the town, and should have alleged what particular officer's negligence caused the injury, but by answering, the defendant waived its right to question the sufficiency of the complaint on that ground.

4. NEGLIGENCE—NOTICE OF DANGEROUS CONDITION—EVIDENCE.

In an action against a town for damages caused to plaintiff by the caving in of a gravel pit while plaintiff was working therein under the employment and direction of the street commissioner a conversation had by a witness with the street commissioner a few minutes before the injury in which witness informed the commissioner of the dangerous condition of the pit was admissible in evidence to show notice to the commissioner of such dangerous condition.

5. SAME.

Where a street commissioner in charge of the work of excavating gravel from a pit was informed by an employee of the dangerous condition of the pit, it was his duty to inform other employees of what he had heard of the condition of the pit and to make an inspection and if the pit was found dangerous to protect the workmen therein, and his failure to make such inspection and to give employees in the pit the information he had received of its condition was negligence which would render the town liable for injuries to an employee, who had no notice of the danger, caused by the caving in of the pit, whether the commissioner directed the employee what particular place in the pit to work or whether the employee selected the place for himself.

6. PRACTICE—INSTRUCTIONS—EXCEPTIONS.

Where the instructions to the jury were embodied in a general charge and at its close a party made a general objection and exception without pointing out to the court any specific error in the instruction such exception will not be considered on review.

7. PRACTICE—REMISSION OF PART OF VERDICT TO PREVENT NEWTRIAL.

Where the trial court informed plaintiff that unless he remitted a certain part of a verdict returned in his favor a new trial would be granted and the plaintiff to avoid a new trial made the remission, the remission was voluntary and the plaintiff cannot afterwards complain that the court refused to enter judgment on the verdict as returned.

8. APPELLATE PRACTICE—VERDICT—CONFLICTING EVIDENCE.

In an action for damages for personal injury where the jury under proper instructions and upon conflicting evidence determines the material facts in plaintiff's favor the verdict will not be disturbed on appeal.

9. SAME—RELEASE.

In an action for damages for personal injuries where the court properly instructed the jury in reference to a release claimed to

have been executed by plaintiff, and the jury found that at the time of signing the release, because of the effect of his injuries and of drugs administered to him the plaintiff's mind was not in such condition as to properly understand that he was making a settlement of the damages for his injuries and that he did not comprehend what he was doing, a judgment in favor of plaintiff will not be reversed because of such release.

10. MASTER AND SERVANT—NEGLIGENCE—RELEASE—REPAYMENT.

Where an employee was injured through the negligence of his employer and a release was obtained in consideration of the payment by the employer of a physician and the expense of treatment at a hospital under such circumstances that the employee was not bound by the release, he was not required to refund the amount so paid to third persons in his behalf before bringing an action for damages for the injury.

11. SAME—INSTRUCTIONS—MONEY PAID FOR PLAINTIFF'S BENEFIT.

In an action against a town by an employee for damages for injuries caused by negligence of defendant where defendant had paid the expense of a physician and hospital treatment and procured a release under such circumstances that plaintiff was not bound thereby an instruction that directed the jury, in rendering their verdict, to give defendant credit for any sum shown to have been paid by defendant for plaintiff's benefit under the terms of the release was proper.

*Appeal from the District Court of El Paso County.*

William F. Liafe was employed by the street commissioner of Colorado City to work in a gravel-pit as an ordinary laborer, and while so employed, the gravel bank caved in and fell upon him, injuring him to such an extent that he was compelled to have his left leg amputated just below the knee. In the complaint, the plaintiff charges that his injury was due to the negligence of the officers of the town; that the officers knew that the gravel bank was in a dangerous condition, and knew that the plaintiff was not aware of its dangerous condition; and that said officers negligently failed to notify plaintiff of the dangerous condition of the bank, but ordered him to go to work at the place where the injury occurred.

The defendant denies generally the allegations of the complaint, and, for a second defense, alleges, in substance, that the injuries to the said plaintiff were not due or owing to, or caused, by, negligence on the part of the defendant, but were due to and caused by negligence on the part of the plaintiff, and that, "without such negligence on the part of the plaintiff, the said injuries would not have happened." And, for a further defense, that on the 9th of December, 1897, the plaintiff, in consideration of the payment by the town of Colorado City of certain charges for surgical and medical treatment, and for his care at a hospital, executed a formal written release of the town and of its officers from all damages on account of the injuries received by him on the 8th of December, 1897,—being the injuries complained of in this suit.

The replication puts in issue the second defense of the answer, and alleges further that the said agreement was signed by Liafe while he was under the influence of drugs, opiates, and medicines administered to him for the purpose of allaying pain, and while he was incapacitated from attending to business and was ignorant of the contents of said agreement.

Upon the trial, W. H. Watson was permitted, over the objection of the defendant, to testify to a conversation alleged to have occurred between the street commissioner and a man named Wilcox, in the absence of Liafe, in reference to the existence of a crack in the gravel bank above the place where Liafe afterwards worked.

The testimony, in substance, was as follows:

"I know Wilcox by sight. I saw him there at the bank that morning; he went down the street and then came back.

"Q. What did he say when he came back to the bank?

"A. He told them to hand him up a shovel, and he would knock the bank down.

"Q. State all that he said.

"A. He said that if they would hand him a shovel he would knock the bank down, and he said there was a crack about an inch

wide, on top.

"Q.   What did Mr. Kinsman say?

"A.   Mr. Kinsman said for him to come down and drive his team in and load it up, so as to get the wagon out; and then knock it down."

The witness Watson did not see a crack in the bank, and there is no testimony showing the existence of the crack in the bank; and the witness Kinsman, who was the street commissioner, denied having had any such conversation with watson.

A witness, Harry High, testified that he was a city teamster, and was in the employment of the town, and was working at the gravel-pit, at the time of the accident.   The plaintiff testified that he was employed on the morning of the 8th of December, 1897, the day of the accident, by Kinsman, the street commissioner, to work in and about the gravel-pit in question; that when he went to the place, he was directed by the street commissioner to commence the shovelling of gravel; that within a very few minutes after he commenced to work, there was a cave-in, and a large quantity of dirt fell upon him; and that, as the result of the accident, he was compelled to have his left leg amputated just below the knee.

The trial resulted in a verdict for the plaintiff in the sum of $20,000.   Upon motion for a new trial, the defendant, upon the statement by the judge of the court that unless the sum of $15,000 was remitted, a new trial would be granted, remitted the sum of $15,000; the motion for new trial was overruled, judgment was rendered in favor of the plaintiff for the sum of $5,000, and the defendant appeals to this court.

Cross errors are assigned by the plaintiff upon the action of the court in requiring that the sum of $15,000 be remitted.

Mr. John W. Sleeper and Mr. John R. Watt for appellant.

Mr. J. K. Vanatta and Mr. Murat Masterson for appellee.

Mr. JUSTICE STEELE delivered the opinion of the court.

There are twelve assignments of error.   The assignments principally discussed being those relating to the admission of the conversation as testified to by the witness Watson, and the giving and refusal of certain instructions.   Misconduct of the attorney for the plaintiff in his address to the jury is alleged as a ground for reversal, and an affidavit concerning the alleged misconduct appears in the record, but the record does not show that the court's attention was directed to the alleged misconduct, and we will not consider the assignment.   It sufficiently appears from the record in the case that the street commissioner, who, under the ordinance of the town of Colorado City, has control of the city teams, was engaged in hauling gravel from the pit in question for the improvement and repair of the town property.   The plaintiff was employed by the street commissioner as such, and at the time of the accident was working for the town; and the town is liable to the plaintiff for damages which he may have sustained by reason of the negligent act of the officer of the town while engaged in performing the duties of his office.

The defendant contends that is was not within the power of the street commissioner, without express direction from the board of trustees of the town, to excavate in this gravel-pit, even for the purpose of obtaining gravel to repair the streets; but we cannot agree with counsel, and we are satisfied that it was not essential that there should be express authority from the town board to work the gravel-pit in question, because the right and authority to obtain the dirt and gravel necessary for the repair of the streets are implied from the power given to the street commissioner "to superintend and direct the working of all teams in the employe of the town," as well as "under the direction of the town board, to take the general care and supervision of all streets, highways and ditches within the corporate limits of the town, and to direct and make such repairs and improvements as he may

deem necessary and as the Board may from time to time direct."

The plaintiff assigns as error the admission of the record of the appointment of the street commissioner; and under this assignment attacks the sufficiency of the complaint, and says that the allegation in the complaint, "that the officers of said town were careless and negligent of their duty toward the plaintiff, and carelessly and negligently failed to notify plaintiff of said dangerous condition, but, on the contrary, ordered him to go to work at a place where he was so injured as aforesaid," does not state a cause of action. And, by way of argument, says that the complaint should have stated which particular officer of the town was so negligent, and that an allegation that the plaintiff was employed by the proper officers of the town is not an allegation that he was employed by the town. The complaint, perhaps, should have been more specific. It should, perhaps, have stated that the plaintiff was employed by the street commissioner of the town, and that he was employed to work for the town; but we are satisfied that the defendant, by answering over, has waived the right to question the sufficiency of the complaint, and has supplied by its answer the defects in the complaint.

The conversation between Wilcox and Kinsman, the street commissioner, was properly admitted. Wilcox's statement to the street commissioner was notice to him that the bank was in a dangerous condition; and upon being notified, it was the street commissioner's duty to Liafe (who did not hear the conversation, and did not know of the condition of the bank) to inform him of the facts as stated by Wilcox. It was also his duty to make an inspection of the bank, and if it had cracked and was dangerous, to protect the workmen. The testimony shows that within a few moments after the conversation with Wilcox, Liafe came to the bank, and was directed by Kinsman to commence work. The testimony is conflicting as to whether Kinsman directed Liafe to work in a particular place or Liafe selected the place himself. In either event, Kinsman's duty to Liafe was to put him in pos-

session of all the facts within his knowledge which affected the safety of the place Liafe was working in.    Kinsman did not notify Liafe that Wilcox had told him there was a crack in the bank on the surface, nor did he make an inspection of the bank.    Kinsman testified that there was a constant sliding of the gravel down the face of the bank when the workmen dug under it, but that when the dirt fell which injured Liafe there was an unusually large amount of dirt and gravel came down; so that the jury was warranted in finding that the bank was in a dangerous condition when Liafe commenced work, and that Kinsman had. knowledge of it.

We have not been advised by counsel, in argument, of the error committed by the court in refusing to give the instructions offered, and we must decline, therefore, to consider these assignments.

The charge given by the court was a general one, and at the close of the charge, the defendant made a general objection to the charge and took an exception, but did not point out to the court any specific error in the instructions.    This court has repeatedly held that under such circumstances exceptions will not be considered.

The cross errors, we think, are not tenable.    The plaintiff voluntarily remitted $15,000.    It was not the less voluntary because the court declined to allow the verdict of $20,000 to stand, and intimated that unless there was a remitment he would grant a new trial; because the plaintiff had the alternative of submitting to a new trial or accepting a verdict for the sum of $5,000, and having accepted a verdict for the sum of $5,000, we think he cannot now complain that the court refused to enter judgment upon the verdict as rendered.

The material facts necessary for recovery were, under the instructions of the court, found in favor of the plaintiff,—that the plaintiff was employed by the town of Colorado City to work in the gravel-pit; that the town had knowledge, through its street

commissioner, that the place where the plaintiff was directed to work was a dangerous place; that the plaintiff did not have knowledge that the place was dangerous, and that he went to work without such knowledge, under the direction of the street commissioner; that while so employed he was injured; that the injury was caused by the negligence of the officers of the town. And, there being a conflict in the testimony, we cannot disturb the verdict.

The court properly instructed the jury in reference to the release; and the jury found that the plaintiff did not, at the time of the signing of the release, comprehend what he was doing, and that, because of the effect of the accident as well as of the drugs which had been administered to him, his mind was not in such condition as to properly understand that he was making a settlement with the town for and on account of damages.

Counsel claim that before Liafe was entitled to commence a suit for damages against the town, he should have paid back to the town the money expended by the town for his care and medical services. Without passing upon the question whether or not in cases of this character it is necessary, as a condition precedent to the commencement of the suit, that money paid for and on account of the release should be refunded, in this case no money was received by Liafe, and he only accepted the services of a physician and treatment at a hospital, at the instance of the town, and we do not believe that it was necessary under such circumstances for Liafe to have ascertained the amount, if any, paid by the town to third persons in his behalf, and to have refunded it to the town before the commencement of the suit. The jury were instructed by the court, in rendering their verdict, to give the town credit for any sum shown to have been paid by the town for the benefit of Liafe under the terms of the release. We think this instruction was proper under the circumstances of this case.

We perceive no error in the record which would warrant us in disturbing the verdict of the jury, and the judgment is therefore affirmed.

*Affirmed.*