No. 14,978.

McCarthy et al. as Trustees of the Denver and Rio Grande Western Railroad Company *v.* Eddings.

(127 P. [2d] 883)

Decided June 29, 1942.

Mr. T. R. Woodrow, Mr. Walter M. Campbell, Messrs. Tupper, Smith & Holmes, for plaintiffs in error.

528

Messrs. ADAMS, HECKMAN & RASO, for defendant in error.

*In Department.*

MR. JUSTICE BOCK delivered the opinion of the court.

MARSHALL EDDINGS, to whom we hereinafter refer as plaintiff, obtained a judgment in the sum of $10,832.15 against Wilson McCarthy and Henry Swan, as trustees of The Denver and Rio Grande Western Railroad Company, hereinafter designated defendants. A reversal of the judgment is sought on this review. The errors assigned for reversal may be summarized as follows: (1) Failure to prove negligence; (2) failure to prove proximate cause; (3) release as a bar to recovery; (4) excessive damages.

1. At the conclusion of all the testimony defendants moved for a directed verdict because, among other grounds, of the failure of plaintiff to prove negligence. The motion was denied. According to plaintiff, who was employed by defendants as a track inspector or patrolman, the left front wheel of a motor car which he used in performing his duties, "broke off" while he was on an inspection trip, causing the car to be derailed, resulting in his injury; that there were some defects or broken places in the hub of this wheel which were not visible to him; that he had no knowledge of such defects and could not have discovered them in the exercise of ordinary care in the performance of his duties; that it was the duty of defendants to furnish him a motor car without defects, and to maintain the same in good and safe condition when used by him, and to make reasonable inspections of its various parts which were invisible to him, and that defendants failed to make such reasonable inspection; that due to some defect unknown to him, the aluminum hub of the wheel in question became cracked, or otherwise defective, and broke off, causing said wheel

to become detached from the motor car and causing the latter to be derailed. Defendants' contention is, that if there were any defects in the hub of the left front wheel of the motor car that caused it to be derailed, such defects were latent and invisible, and were not, and could not be, discovered by them by ordinary inspection; that defendants gave such motor car, including its left front wheel, reasonable and ordinary inspection; that such inspections were given at least three times a year by their foremen of roadway equipment and once a year by their supervisor of work equipment; that such motor car was a standard make of car and purchased from a reputable manufacturer; that defendants furnished plaintiff a motor car without defect, so far as they knew or could ascertain by reasonable inspection, and that such car was in safe condition for plaintiff's use at all times; that they are not liable for hidden or latent defects, if such existed; that defects, if any, that might have been discovered after the accident as being in the hub of the wheel which broke off, had nothing to do with the derailment of the motor car and were not the proximate cause of the injury. In other words, counsel for plaintiff contend that the motor car was derailed by the breaking off of the left front wheel, while the contention of counsel for defendants is that the left front wheel broke off because of the derailment. Counsel for defendants say that the facts and circumstances point to the conclusion that the motor car must have struck some object, such as a rock, slag or metal, which caused the derailment. A search by plaintiff and others to find such object as would have caused a derailment ended in failure. There were some flange marks on the ties that indicated that the left front wheel remained on the car for a distance of about twenty feet after derailment, but we are unable to say that the evidence on this phase of the case was so conclusive as to justify the court in refusing to submit it to the jury.

On review, we are required to consider the

evidence in the light most favorable to the party successful in the trial court. *First National Bank v. American State Bank*, 73 Colo. 254, 215 Pac. 473; *Ozman v. Mohr*, 76 Colo. 491, 233 Pac. 151; *Wyman v. McCarthy*, 93 Colo. 340, 26 P. (2d) 245; *Denham Theatre v. Beeler*, 107 Colo. 116, 109 P. (2d) 643. The presumption is that the proof sustained the verdict. *Dusing v. Nelson*, 7 Colo. 184, 2 Pac. 922. Where there is a reasonable doubt as to inferences to be drawn from facts, the issue of negligence must be submitted to the jury. *Publix Cab Co. v. Phillips*, 98 Colo. 542, 548, 58 P. (2d) 486.

■ On this issue of negligence we also are confronted with the question of reasonable inspection to ascertain the defects in this wheel, as shown by the evidence. The trial court instructed the jury—and counsel for defendants made no objection to such instruction — that before they could find for plaintiff they "must further find that such defect must have been of such a character that it could have reasonably been determined and ascertained by a reasonable inspection and examination of the same that the left front wheel of said motor car might become detached, causing a derailment of the car." The ordinary care and caution required under circumstances of the character here presented was announced by us in *Rio Grande Southern R. R. Co. v. Campbell*, 65 Colo. 217, 223, 176 Pac. 275, as follows:

"The basis of the duty of inspection being the tendency of appliances to deteriorate while in use, it is manifest that the necessity for vigilance on the employer's part constantly increases the longer that use continues. (Note in 41 L.R.A. 80.) The length of time which an appliance has been in use may be a specific circumstance which puts an employer upon inquiry as to the condition of such appliance."

■ In the instant case the evidence discloses that the motor car in question had run at least 47,000 miles during approximately eighteen months without any inspection of that portion of the wheel in which the de-

fects were alleged to have been present. We, of course, do not decide that this was sufficient mileage to put defendants upon notice, but it is another fact about which a reasonable doubt may exist. Where negligence involves reasonable care, it always is a question to be resolved by a jury. *Williams v. Sleepy Hollow Mining Co.,* 37 Colo. 62, at 69, 86 Pac. 337; *Rimmer v. Wilson,* 42 Colo. 180, at 183, 93 Pac. 1110; *Arps v. Denver,* 82 Colo. 189, at 197, 257 Pac. 1094; *Higgins v. Boulder,* 105 Colo. 395, 397, 98 P. (2d) 996.

 2. There being some evidence of negligence, the question then presented is, Was such negligence the proximate cause of the injury? From what we have said above, it follows that the facts relative thereto also are in the field of reasonable doubt, which required a submission of that issue to a jury, and this was done. If the alleged defects in the hub caused the derailment, such was the proximate cause, and proximate cause, under the facts before us, was a question for the jury. *Longmont v. Swearingen,* 81 Colo. 246, 251, 254 Pac. 1000.

 3. Counsel for defendants plead as a fourth defense, a release of liability by plaintiff for a consideration of $150, such release being dated December 20, 1938. In reply to this defense counsel for plaintiff allege mutual mistake in the execution of said release. The record discloses that doctors, who at least were neutral and for the payment of whose services plaintiff was not liable, informed plaintiff, after several examinations, that his arm, the bones of which had been broken, was straight, and he was very fortunate in coming out with such a good arm, and they released him for work. Both plaintiff and defendants believed that the broken bones in plaintiff's arm had fully united, and that plaintiff had sustained no permanent injury. In this it appears they were mutually mistaken, because even after several further attempts at adjustment, the broken bones in the arm remained ununited, resulting in permanent injury. "A release or a contract not to sue which has been ob-

tained * * * as the result of a mutual basic mistake may be set aside as ineffective, and in actions of tort a release or a contract not to sue thus obtained is not a defense to the action." Restatement of the Law—Torts, p. 531, c. 46, §900. The issue involving mutual mistake was properly submitted to the jury, and they resolved the same in favor of plaintiff. No prejudicial error resulted. The retention by plaintiff of the $150 which was paid as consideration for the release, and its deduction by the jury from the amount of damages awarded was proper. *Colorado City v. Liafe*, 28 Colo. 468, 65 Pac. 630; *Roberts v. C. S. & I. Ry. Co.*, 45 Colo. 188, 101 Pac. 59; *Yelloway v. Garretson*, 89 Colo. 375, 3 P. (2d) 292.

4. The verdict was in the sum of $11,000, less $167.85, this last item reflecting the deduction by the jury of the sum of $150 with interest at six per cent per annum. From a careful study of the record, we do not feel we would be justified in holding this verdict to be excessive. Plaintiff's injury is permanent, and his age, expectancy of life and other factors would indicate that there is no basis upon which to found a holding that the jury was influenced by passion, prejudice or other improper motive in returning its verdict. *Riss & Co. v. Anderson*, 108 Colo. 78, 114 P. (2d) 278.

We have considered, but find it unnecessary to discuss, other contentions.

The judgment is affirmed.

MR. CHIEF JUSTICE YOUNG, MR. JUSTICE BAKKE and MR. JUSTICE HILLIARD concur.