[No. 3683.]

## THE CITY OF DENVER v. STEIN.

1. CITIES AND TOWNS—SIDEWALKS—NEGLIGENCE.

In populous portions of a city where the sidewalks are constantly used by the public, it is the duty of the city to use reasonable care to keep the entire sidewalk in repair and free from defects and reasonably safe for public travel.

2. INSTRUCTIONS.

A party to an action is not in a position to complain of an instruction given at his request.

3. PERSONAL INJURY—EXCESSIVE DAMAGE.

In cases of personal injury it is exclusively the province of the jury to estimate and assess the damages, and unless the amount allowed is so manifestly disproportionate to the injury received as to make it apparent that the jury were influenced by prejudice, misapprehension, or by some corrupt or improper consideration, the law does not warrant the court in disturbing the verdict on the ground that the damages are excessive.

*Appeal from the District Court of Arapahoe County.*

Mr. F. A. WILLIAMS and Mr. G. Q. RICHMOND, for appellant.

Messrs. FELKER & DAYTON, for appellee.

Mr. JUSTICE GODDARD delivered the opinion of the court.

This is an action instituted by Robert Stein, the appellee,

to recover damages for personal injuries alleged to have been caused by an obstruction in the sidewalk at the intersection of Larimer and Sixteenth streets, in the city of Denver. The facts established on the trial, briefly stated, are these:

About 8 o'clock on the evening of May 6, 1894, Stein, while passing down Larimer street across Sixteenth, struck his foot against an iron pipe about half an inch in diameter, which protruded above the ground about three inches, and was thrown on the curbing which runs along Sixteenth street, and severely injured. At the point where this occurred there was a space of about two feet of ground between the Larimer street flagging and the curbstone. The iron rod stood in this space about midway between the flagging and the curbstone, and six inches within the Larimer street sidewalk. It was placed there by the city originally as a sounding rod for a police telephone box, and was left standing when the patrol box was removed some time previous. It was necessary for plaintiff, in crossing Sixteenth street, to pass over this space of ground. The rod being small, it was not discernible in the dusk of the evening, and plaintiff had no knowledge of its existence. The jury found for plaintiff, and assessed his damages at $4,200, and judgment was entered upon the verdict. To reverse this judgment the city brings the case here on appeal. Counsel for appellant urge but two grounds for reversal: First, that the court erred in giving certain instructions; second, that the damages are excessive. The instructions challenged are the following:

"IV. The court further instructs the jury that if you find from the evidence that the point where the plaintiff received his injury was a populous portion of the city, and where there was a large amount of public travel, it was the duty of the city to keep and maintain the sidewalk at that point, and the *whole* thereof, in a reasonably safe condition for public travel; and the public at such point had the right to the use of the *whole* of said sidewalk, and had the right to assume that the whole thereof was reasonably safe for public travel.

"V. The court further charges the jury that if you find

from the evidence that the place where plaintiff received his injury was a thickly settled portion of the city, then it was the duty of defendant city to keep and maintain the whole of its sidewalk, from the building front to the curbstone, in a reasonably safe condition for public travel; and it is no defense that there was ample room for pedestrians to travel along that portion of the walk covered with flagging. * * *"

While there is conflict between the adjudicated cases upon the question as to whether a city is bound to keep in repair its suburban streets and sidewalks to their entire width, yet upon principle it is clear, and by the weight of authority it seems to be settled, that with reference to sidewalks in populous portions of the city and such as are constantly used by the public, its duty is to use reasonable care in keeping them in repair and free from defects throughout their entirety. *The City of Indianapolis v. Gaston*, 58 Ind. 224; *City Council of Montgomery v. Wright*, 72 Ala. 411; *Bacon v. City of Boston*, 3 Cush. 174; *Stafford v. The City of Oskaloosa*, 64 Ia. 251; *Chicago City v. Robbins*, 2 Black, 418; *Goins v. City of Moberly*, 127 Mo. 116; *Monongahela City v. Fischer*, 111 Pa. St. 9.

We think, therefore, that these instructions correctly define the duty of defendant with reference to the sidewalk in question, it being undisputed that it is located in a populous portion of the city, and was constantly used by the public by day and in the night-time.

In addition to these instructions the court, at the request of the city, charged that it was for the jury to determine from all the evidence whether the continuance of the iron rod or bar at the place where it appears to have existed, was an act of negligence on the part of the city; and whether such obstruction was of such size and length, and was so situated as to constitute an obstruction sufficient of itself to render the sidewalk at that point unsafe and dangerous to pedestrians; and if they found that it did not interfere with ordinary travel, and that the sidewalk, notwithstanding its existence, was reasonably safe, then they should find for the defendant.

It is contended, in behalf of the city, that these instruc-
tions are inconsistent and irreconcilable; and that if the law
as asked by the plaintiff and first above given is correct, then
the court erred in giving the latter instruction, because it
tended to confuse the jury.   We can see no inconsistency in
these instructions.   Those first given correctly define, as we
have seen, the duty of the city in regard to sidewalks situated
as the one in question was; and the latter instruction sub-
mitted to the jury the question whether the facts, as disclosed
by the evidence, showed a failure on its part to perform such
duty; but if it were otherwise, and the results contended for
by counsel followed from the giving of the latter instruction,
the city is not in a position to complain, since it was given
at its request.   The instructions, as a whole, clearly and cor-
rectly announce the law applicable to the facts of the case,
and fairly submitted to the jury the question of defendant's
liability.

In answer to the further claim that the damages are exces-
sive, the record discloses that at the time of the trial, which
was more than two years after the happening of the accident,
the plaintiff had not entirely recovered.   He was still suffer-
ing from hernia, caused by falling across the curbstone, and
was incapacitated from following his trade, which was that of
a cigar packer, and which necessitated his standing up; that
he could only perform labor while sitting down, and was there-
fore compelled to do work as a maker of cheap cigars, a trade
which he had not learned, and at which he could only earn
$6.00 per week; while as a cigar packer his average earnings
before and at the time of the injury were $20.00 per week.
He was totally incapacitated from performing labor for six-
teen weeks, and since then the loss of his earning capacity
was shown to have been $14.00 per week.   For some time
after the injury he suffered intense pain, and at the time of
the trial, to stand any length of time, or to walk any distance,
caused him pain.   It is somewhat doubtful from the evi-
dence whether the injury was a permanent one or not.   Un-
der these circumstances, the amount of damages was a matter

for the jury to determine.  As was said in *Wall v. Livezay*, 6 Colo. 465: "In cases of this character, the law does not warrant us in disturbing the verdict * * * unless the amount of damages allowed is so manifestly disproportionate to the injury received as to make it apparent that the jury were influenced by prejudice, misapprehension, or by some corrupt or improper consideration.

"It is exclusively the province of the jury to estimate and assess the damages; and the amount to be allowed in such cases as this rests largely in their sound discretion."

The case has been twice tried.  The former trial resulted in a verdict for a larger amount.  We do not, therefore, feel warranted, under the facts disclosed in this record, in interfering with this verdict on the ground that the damages allowed are excessive.  It follows that the judgment of the district court must be affirmed, which is accordingly done.

*Affirmed.*