**Dennis ARTERY, Plaintiff–Appellee and Cross–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, a corporation, Defendant–Appellant and Cross–Appellee.**

No. 98CA0181.

Colorado Court of Appeals, Div. I.

Aug. 5, 1999.

Waltz & D'Antuono, Donald F. D'Antuono, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Levy & Lambdin, P.C., Stuart D. Morse, L. Kathleen Chaney, Englewood, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge DAVIDSON.

In this automobile insurance case, defendant, Allstate Insurance Company (Allstate), appeals from the declaratory judgment entered in favor of plaintiff, Dennis Artery, finding that a release signed by plaintiff and an uninsured driver did not bar plaintiff from seeking uninsured motorist benefits. Plaintiff also cross-appeals from that portion of the judgment denying his request to set aside the release based on a mutual mistake of fact. We affirm in part and reverse in part.

On June 1, 1994, plaintiff and another driver were involved in an automobile accident. The other driver had no insurance on his vehicle and offered to settle with plaintiff in exchange for a release of liability against him.

Although the other driver spoke with an attorney who gave him general advice concerning the settlement and release, the release was written by the other driver.

Plaintiff had contacted his insurance agent about payment for his damaged truck and was informed that he did not have collision coverage for the vehicle. Because plaintiff depended on his truck to do his job, he settled with the other driver on June 4, 1994, for $5000. In return for this consideration, plaintiff signed a form purporting to release the other driver from all liability for "property damage, medical expenses and pain and suffering" resulting from the accident.

In August 1994, plaintiff began treatment for neck and lower back problems. Subsequently, he consulted with a neurosurgeon about these symptoms.

Plaintiff then submitted a claim to Allstate seeking compensation under the uninsured motorist provision of his insurance policy. Allstate denied the claim, relying on the release signed by plaintiff.

Plaintiff filed suit against Allstate and the other driver, alleging claims of breach of an insurance contract and negligence and arguing that the release was not effective because his injuries were not known or contemplated at the time the settlement was entered. The other driver later was dismissed from the suit by the trial court upon plaintiff's motion.

After reviewing the depositions of plaintiff and the other driver and hearing argument on the issues, the trial court found that, because plaintiff and the other driver both complained of being stiff and sore, they knew that they had been injured and it was only the extent of the injuries that was unknown at the time of the settlement. The court then determined that this knowledge precluded the existence of a mutual mistake of fact that would permit the release to be set aside.

The court also determined that the release was valid as to the specific damage elements of personal injury named therein. But, it found that plaintiff had a claim for relief against the other driver for those damages not specifically enumerated in the release. Therefore, the court determined, plaintiff had the right to proceed to arbitration on such damages because the other driver was uninsured at the time of the accident.

I.

Allstate contends that the trial court erred in its interpretation of the release. Specifically, it argues that the release entered into by plaintiff and the other driver was a general release that encompassed all future damages arising out of the accident and that, therefore, plaintiff fully released all of his claims. Further, Allstate argues that, because plaintiff entered into this release without its consent as required under the policy, plaintiff is not entitled to recover uninsured motorist benefits.

On the other hand, on cross-appeal, plaintiff contends that the trial court erred in not setting aside the release in its entirety based on a mutual mistake of fact concerning the nature and extent of his injuries. In the alternative, plaintiff argues that the release encompasses, at most, only his property damage claim and that part of his personal injury claim consisting of medical expenses and pain and suffering. Therefore, he argues, because he did not release other damages related to his personal injury claim, such as loss of enjoyment of life, emotional stress, permanent partial disability, and loss of earning capacity, he is entitled to seek recovery for these damages.

We conclude that a release of damages flowing from a personal injury claim is a release of that claim and all its attendant damages and that, here, the release was a general release of liability for all claims resulting from the accident. We also conclude that there was no mutual mistake of fact concerning the nature of plaintiff's injuries that would permit rescission of the release. Finally, we conclude that, because plaintiff entered into this settlement without obtaining Allstate's consent to do so, he is preclud-

ed from asserting an uninsured motorist claim.

### A.

■ A release is the relinquishment of a claim to the party against whom such claim is enforceable. *Cingoranelli v. St. Paul Fire & Marine Insurance Co.*, 658 P.2d 863 (Colo. 1983).

■ A general release is an instrument by which one party relinquishes all of his or her claims against another in exchange for consideration. The language of a general release reflects the parties' intent to dispose of all claims one party might have against the other in exchange for payment for the injuries the party has suffered. Once the claims are released, the release bars the injured party from seeking further recovery. *See Ashley v. Roche*, 163 Colo. 498, 431 P.2d 783 (1967).

■ In contrast, a partial release is not intended to release all of the claims a party may have resulting from a particular incident. It operates only to provide a release of liability for certain claims. While the injured party is barred from seeking further recovery from the released party on the claims released, it does not preclude the releasing party from seeking relief for other claims not covered by the release or from other potentially liable parties not named in the release. *See Cingoranelli v. St. Paul Fire & Marine Insurance Co., supra* (settlement of one independent claim for relief does not necessarily result in satisfaction of another); 3 P. Swisher, *No–Fault & Uninsured Motorist Automobile Insurance* § 31.110 (1999) (if insured wishes to settle part of his or her claim with tortfeasor and reserve right of action for other claims, release must specifically provide that it is only partial).

■ The scope of claims to be released is determined primarily by the intent of the parties as expressed in the release instrument. It is to be considered in light of the nature of the claim and the objective circumstances underlying execution of the release. *Cingoranelli v. St. Paul Fire & Marine Insurance Co., supra.*

■ A court is to construe a release to effectuate the manifest intention of the parties. Such construction rests on good sense and plain understanding of the words used and the acts directed to be performed. *Neves v. Potter*, 769 P.2d 1047 (Colo.1989).

■ Here, the release stated:

### FULL AND FINAL RELEASE OF LIABILITY

### FOR PROPERTY DAMAGE AND PAIN AND SUFFERING

For the consideration of the sum of $5000.00, [insured] releases now and in the future, [driver] from all liabilities for property damages, medical expenses and pain and suffering resulting from the auto accident on the morning of June 1, 1994.... This is a full and final release of all liability for property damage, medical expenses and pain and suffering.

It is undisputed that, by this release, plaintiff has waived any further claim relating to property damage. What is in dispute, however, is the scope of the release of plaintiff's personal injury claim and, specifically, the effect of the language releasing liability for medical expenses and pain and suffering. Thus, the issue is whether, in a "full and final release of liability," the listing of some, but not all of the allowable damage components which normally flow from a particular claim, here, personal injury, limits that release to only those elements of damage. We conclude that it does not. Accordingly, here, because plaintiff received compensation for particular damage elements arising from his personal injury claim, he has released the entire claim and is precluded from reassertion of that claim in any other form.

■ A claim is a demand for something due or believed to be due. Damages are the measure of the loss or harm, generally in the form of pecuniary compensation, resulting from an injury suffered by a person because of the unlawful act, omission, or negligence of another. *See Black's Law Dictionary* 313 & 466 (rev. 4th ed.1968); *Webster's New Collegiate Dictionary* 205 & 286 (1974).

██ A party seeking compensation for a loss as a result of the acts or omissions of another must first plead and then establish a claim for which damages may be awarded. A person does not receive damages without first pleading and proving a claim from which those damages arise. *Cf. Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo.1992) (facts asserted were the basis of a claim asserted in order to recover damages).

██ Medical expenses and pain and suffering are damages that may be sought for a claim of personal injury. Similarly, the damages plaintiff now asserts also arise from a claim of personal injury. Although it is true that a plaintiff, in a personal injury action, could seek damages for loss of enjoyment of life, emotional stress, permanent disability, and loss of earning capacity, as well as medical expenses and pain and suffering, these damages would be awarded as compensation for the single claim of personal injury. Thus, the recitation of damages suffered does not state a claim for which relief may be granted but instead describes the recovery to be sought once the claim is established. Indeed, a person seeking damages must show that he or she is legally entitled to those damages by pleading and establishing the claim from which the damages arise. *See Bowen v. Farmers Insurance Exchange*, 929 P.2d 14 (Colo.App.1996) (insured is not legally entitled to recover damages until agreement is reached or award is rendered).

Here, under the release, plaintiff received compensation for damages reflecting his medical expenses and pain and suffering as a result of his claim of personal injury, and therefore, plaintiff and the other driver acknowledged the establishment of and compensation for a personal injury claim. In exchange for this compensation, plaintiff has waived his claim of personal injury and, thus, has also waived any recovery for other damages that similarly and ordinarily arise from such claim. Hence, because plaintiff's entitlement to the damages he now asserts rests on the personal injury claim which he has relinquished, plaintiff is precluded by the release from seeking further recovery for damages attendant to a bodily injury claim.

## B.

██ Nevertheless, plaintiff contends that the trial court erred in determining that no mutual mistake of fact existed to permit rescission of the release. Specifically, he argues that, because he was unaware of the true nature and extent of his injuries at the time he settled his claim with the other driver, the release is ineffective as to this claim and should be set aside. We do not agree.

██ As a general rule, a release, duly executed and fairly obtained, serves as a complete bar to further recovery for injuries sustained even if uncertainty exists concerning the prognosis of the injuries. *Davis v. Flatiron Materials Co.*, 182 Colo. 65, 511 P.2d 28 (1973). However, before a release will be a bar to a claim for an unknown injury, it must be shown from the circumstances surrounding the release that such was the releasor's intent. If unknown injuries were not within the contemplation of the parties, the release will be set aside. *Gleason v. Guzman*, 623 P.2d 378 (Colo.1981).

██ The party seeking relief from a release must show that he or she released the claims under a mistaken or false impression that he or she was fully informed as to the nature of the injuries. *Scotton v. Landers*, 190 Colo. 27, 543 P.2d 64 (1975).

The supreme court, in *Gleason v. Guzman*, *supra*, recognized that, although there is a need for finality in contractual settlements, there also exists a need to alleviate the unintended effects which human error may impose upon a transaction.

██ The *Guzman* court contrasted the harsh effect of denying rescission of any release, which would require the releasor to assume the risk that the true nature and extent of his or her injuries might be more severe than believed at the time of settlement, with the uncertainty of allowing rescission based on any mistake relating to the injuries sustained by the releasor. The court then adopted an approach midway between these two views, determining that, because an injured party cannot have intended to release a right to a claim of which he or she was unaware, rescission of a release is avail-

able for mistakes relating to the nature of known injuries but not for mistakes concerning prognosis or the future effects of such injuries. Thus, a party seeking to rescind a release must demonstrate the existence of a mutual mistake relating to a past or present fact and not concerning an opinion about the future course of existing injuries. Under such circumstances, the release is deemed ineffective. *See Gleason v. Guzman, supra.*

Here, the record shows that there was no discussion between plaintiff and the driver at the time the settlement was reached concerning waiver of a claim for unknown injuries. Nor is there any language in the release concerning the release of claims based on unknown injuries. Therefore, because it appears that plaintiff and the other driver did not intend that the release would bar a claim for unknown injuries, if the nature of the injuries now asserted by plaintiff was such that he was not aware nor reasonably should have been aware of them at the time of the settlement, then the release would not operate to bar plaintiff's claim. *See Scotton v. Landers, supra.*

Operating from this premise, plaintiff argues that he neither knew nor reasonably should have known that he had suffered back and neck injuries at the time of the accident, and therefore, such injuries are the type for which rescission of the release is appropriate. We disagree.

It is undisputed that, immediately after the accident, plaintiff was examined by paramedics at the scene of the accident. Although the other driver was transported to the hospital, plaintiff was allowed to go home without further examination or suggestion that he see his doctor. Plaintiff felt stiff and sore from the accident, but thought that the pain would gradually diminish. He asserts that he signed the release form under the mistaken belief that his injuries were no more serious than a few bumps and bruises. He argues that he was not aware that he had, in fact, suffered neck and back injuries, not diagnosed or suspected by the emergency personnel who had examined him.

However, plaintiff, in his deposition, admitted that immediately following the accident, his neck felt "a little funny" and that his neck and back "didn't feel normal." He further testified that he became stiff and sore and that, although he felt the same way at the time he signed the release, he did not say anything about his symptoms to the other driver.

Under these circumstances, the trial court properly determined that plaintiff was aware that injury to his back and neck had resulted from the accident. Although plaintiff may not have been fully aware of the extent of his injuries, he was, as a matter of law, on notice that such injuries were present. These injuries, unlike those misdiagnosed in *Gleason v. Guzman, supra,* and *Scotton v. Landers, supra,* were not diagnosed at all because plaintiff did not seek a medical opinion concerning his symptoms. Simply because plaintiff chose to forgo a medical examination before signing the release does not make his injuries unknown. *See Davis v. Flatiron Materials Co., supra* (mistake was self-induced by injured party's failure to communicate worsening of her condition).

Thus, the nature of the injuries for which plaintiff now seeks relief was not unknown at the time of the settlement and cannot now serve as the basis for rescission of the release. *See also Jones v. Cox,* 828 P.2d 218 (Colo.1992) (date of injury for statute of limitations purposes is that date upon which a person knows or should know, by exercise of reasonable diligence, of the injury and its cause); *Mastro v. Brodie,* 682 P.2d 1162 (Colo.1984) (statute of limitations begins to run when claimant has knowledge of facts which would put a reasonable person on notice of the nature and extent of an injury).

### C.

■ The uninsured motorist provision of plaintiff's insurance policy provides in pertinent part that:

BODILY INJURY CAUSED BY UNINSURED MOTORISTS

Allstate will not pay any damages an insured person is legally entitled to recover because of:

1. bodily injury to any person who makes a settlement without our written consent.

*Estate of Harry v. Hawkeye–Security Insurance Co.,* 972 P.2d 279 (Colo.App.1998), is dispositive of plaintiff's contention that, even if the release is considered to be a general release of all his claims, because Allstate has not shown that it will be prejudiced in its ability to assert its subrogation rights against the other driver, plaintiff should be allowed to proceed with his uninsured motorist claim.

In *Estate of Harry,* a division of this court determined that a consent-to-settle clause under an insurance policy served the legitimate public purpose of preserving an insurer's right of subrogation. Therefore, the panel determined, such clause was not contrary to public policy. The panel then determined that the insurer did not need to show prejudice in order to enforce a consent-to-settle clause. We agree with that reasoning.

Hence, because plaintiff here violated the consent-to-settle clause, Allstate is entitled to enforce it without first establishing prejudice.

The part of the judgment denying rescission of the release based on mutual mistake of fact is affirmed, that part allowing plaintiff to proceed with certain claims is reversed, and the cause is remanded to the trial court with directions to dismiss plaintiff's complaint.

Judge METZGER and Judge CRISWELL concur.